DAVIS, Circuit Judge,
concurring:
I join in full Judge Keenan’s thorough opinion for the panel. I write briefly to elaborate on the reasons I believe we are correct in the circumstances presented here to decline to follow the Ninth Circuit’s application of the “relatively lenient” O’Brien standard of First Amendment scrutiny, see United States v. Perelman, 695 F.3d 866 (9th Cir.2012) (amending and superseding opinion on denial of rehearing en banc of United States v. Perelman, 658 F.3d 1134 (9th, Cir.2011)) (“Perelman II”), to the insignia statutes at issue in this case.[1]
Judge Keenan correctly observes that, “as a general principle, expressive conduct is not entitled to the same degree of protection under the First Amendment as is pure speech.” Ante at 369. The qualifier is important, however, as shown by the Johnson Court’s extension of protection to those who communicate their message by burning our nation’s flag; at the intersection of “pure speech” and “expressive conduct,” differential treatment of the latter may not survive scrutiny under the First Amendment.
Included within the scope of protections afforded by the First Amendment, separate and apart from protection of political, artistic, and commercial speech, is the individual interest in “self-expression.” As Chief Judge Kozinski aptly observed:
Alvarez’s conviction is especially troubling because he is being punished for speaking about himself, the kind of speech that is intimately bound up with a particularly important First Amendment purpose: human self-expression. As Justice Marshall explained:
The First Amendment serves not only the needs of the polity but also those of the human spirit — a spirit that demands self-expression. Such expression is an integral part of the development of ideas and a sense of identity. To suppress expression is to reject the basic human desire for recognition *377 and affront the individual’s self worth and dignity.
Procunier v. Martinez, 416 U.S. 396, 427, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) (Marshall, J., concurring). Accordingly, the Court has recognized that “[o]ne fundamental concern of the First Amendment is to ‘protec[t] the individual’s interest in self-expression.’ ” Citizens United v. FEC, [558] U.S. [310], 130 S.Ct. 876, 972, 175 L.Ed.2d 753 (2010) (Stevens, J., concurring in part and dissenting in part) (quoting Consol. Edison Co. of N.Y. v. Pub. Serv. Comm’n, 447 U.S. 530, 534. n. 2, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980)) (second alteration in original). Speaking about oneself is precisely when people are most likely to exaggerate, obfuscate, embellish, omit key facts or tell tall tales. Self-expression that risks prison if it strays from the monotonous reporting of strictly accurate facts about oneself is no expression at all.
United States v. Alvarez, 638 F.3d 666, 674 (9th Cir.2011) (Kozinski, J., concurring in the denial of rehearing en banc). Thus, although the record before us does not reveal the etiology of Hamilton’s disturbed belief that he is a highly-decorated military hero who attained the rank of colonel as a United States Marine, there can be no doubt that the conduct giving rise to his convictions under 18 U.S.C. §§ 702 and 704 constituted (deceitful) expressive conduct, i.e., “free expression.”[2] Similarly, there can be no doubt that one of the governmental interests underlying the criminalization of Hamilton’s expressive conduct is the government’s compelling interest in prohibiting that very conduct, i.e., the very means of self-expression chosen by Hamilton.
So viewed, application of the four-part analysis from O’Brien, see ante at 366, rather than the “exacting scrutiny” approach of Johnson, see id., to justify an affirmance in this case is untenable. At steps three and four of the O’Brien analysis, we are instructed to ask whether “the governmental interest [underlying the statute] is unrelated to the suppression of free expression,” and whether “the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.” United States v. O’Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). It is clear to me that because the answer at step three must be “no” on this record, and because (at step four) the infringement of Hamilton’s rights by the insignia statutes is not merely “incidental,” it is wholly improper to apply the standard articulated at step four. Consequently, application of O’Brien would compel reversal rather than affirmance of the convictions on counts three and four.
In Perelman II, the Ninth Circuit purported to apply O’Brien in affirming Perelman’s conviction under § 704(a) for wearing a Congressional Medal of Honor he had not earned. In doing so the court failed to appreciate the anomaly it created. The court reasoned that the insignia statute’s prohibition on wearing an unearned medal is aimed solely at “conduct,” or, perhaps, merely at speech that is “integral to criminal conduct.” See 695 F.3d at 872 (“[I]n Alvarez, the Supreme Court distinguished examples such as impersonation statutes by explaining that they ‘implicate fraud or speech integral to criminal con *378 duct.’ 132 S.Ct. at 2546. We conclude that wearing a military medal with an intent to deceive falls within that same category.”).[3] But, as we hold, the prohibited “conduct” consists exclusively of protected “expressive conduct” and it is that expressive conduct at which the prohibition on “wearing” is directly aimed.
In dressing as he did, adorned with his unearned medals, Hamilton necessarily made “representations” to his audience, namely, false assertions about his (existent, but very different) past military service and his courage and valor in nonexistent battles. Cf. United States v. Alvarez, - U.S. -, 132 S.Ct. 2537, 2557 n. 1, 183 L.Ed.2d 574 (2012) (Alito, J. dissenting) (“The Act’s use of the phrase ‘falsely represents,’ moreover, connotes a knowledge requirement. See Black’s Law Dictionary 1022 (8th ed. 2004) (defining a ‘misrepresentation’ or ‘false representation’ to mean ‘[t]he act of making a false or misleading assertion about something, usu. with the intent to deceive’ (emphasis added)).”). Under the circumstances of this case, therefore, Hamilton’s wearing the uniform and medals without authority was every bit as expressive as Alvarez’s oral declaration that he had earned the Congressional Medal of Honor. What is at issue in both cases is a criminal enactment that is not simply potentially overbroad, but is a content-based prohibition on protected free expression.[4] Accordingly, the *379 “relatively lenient” O’Brien analysis no more applies to Hamilton’s false expressive conduct about his military past than it would have applied to his words had he orally voiced the same falsehoods in the course of his speech to those assembled for the recognition ceremony in April 2010.[5] The propriety of the respective prohibitions, if any, on “pure speech” on the one hand, and on conduct that is inherently and exclusively expressive, on the other hand, hinges on the availability and fit of alternative means to protect the governmental interests at stake rather than on the level of scrutiny appropriate to the analysis. The level of scrutiny for each should be the same.
All this means that in Perelman II the Ninth Circuit reached the right result for the wrong reason. In seeking to avoid a strict or “exacting scrutiny” analysis, it misapprehended O’Brien steps three and four. Specifically, the court erred in reasoning that
[The government’s compelling interests] are unrelated to the suppression of free expression because, unlike the implementing regulation at issue in Schacht, § 704(a) does not prevent the expression of any particular message or viewpoint. Instead, § 704(a) promotes compelling governmental interests by barring fraudulent conduct.
695 F.3d at 872. As already demonstrated, the government’s interests are not “unrelated to the suppression of free expression.” [6] Moreover, as to O’Brien step four, what Congress has done in its prohibition on unauthorized “wearing” of uniforms and medals is by no measure an “incidental restriction on alleged First Amendment freedoms.” O’Brien, 391 U.S. at 377, 88 5.Ct. 1673. Rather, as I have demonstrated, and contrary to the Ninth Circuit’s hypothesis, it is precisely because the prohibitions on “wearing” uniforms and medals codified in the insignia statutes come into play only when a particularized deceitful “message” in the form of protected (even if false) self-expression is at issue, one of the government’s interests is unavoidably focused on “the suppression of free expression.” And, as Judge Keenan *380 amply demonstrates, ante at 372-74, it is precisely because the government’s compelling interests cannot, in the absence of any plausible alternative means, protect its interests in the aggregate, the First Amendment interest of Hamilton in free self-expression must give way.
In short, as Judge Keenan persuasively demonstrates, proper application of “exacting scrutiny” under the circumstances of this case requires us to affirm Hamilton’s convictions under 18 U.S.C. §§ 702 and 704. Affirmance is justified, not because Hamilton’s rights are in any manner diminished, or because the infringement on his rights is “incidental,” but because the government’s interests are of a higher order in the constitutional calculus. Among the countless falsehoods that Hamilton is constitutionally entitled to communicate about himself in the exercise of his protected right of self-expression, deceitful expressive conduct employing a uniform of the United States military decorated with unearned military medals sanctioned by Congress is off the table, and Congress acted constitutionally in so concluding.

. As Judge Keenan explains, we agree with the Ninth Circuit that an "intent to deceive” element must be imported into the "wearing” prohibitions of the insignia statutes to avoid a substantial overbreadth objection to the statutes. The upshot of this conclusion is that by definition, because the government must prove an intent to deceive, the prohibitions on "wearing” in the insignia statutes will only come into play when a defendant seeks to communicate a message, albeit a false message. See ante at 370-71; see also infra at 377-78. As Judge Keenan further explains, after United States v. Alvarez, - U.S. -, 132 S.Ct. 2537, 183 L.Ed.2d 574 (2012), in the absence of a showing of fraud, or disruption (or a likelihood of disruption) to governmental or judicial processes, or of dignitary or other harm to another, false statements of fact undeniably enjoy First Amendment protection. Ante at 370 n. 14 (citing Alvarez, 132 *377 S.Ct. at 2545-47 (plurality opinion); 2553-55 (Breyer, J., concurring in judgment)).

. In the context of this case, Hamilton’s wearing of the uniform and medals was inherently and exclusively self-expressive; the "message” he conveyed to his audience by his attire did not require that he actually speak. Cf. Rumsfeld v. Forum for Academic and Institutional Rights, Inc., 547 U.S. 47, 64-66, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006).

. In Perelman, the defendant wore only the medal, not a uniform. Thus, the only violation at issue in that case was of 18 U.S.C. § 704(a), (d); § 702 was not at issue, as it is here.

. Tellingly, at oral argument in Alvarez, both Justice Kennedy, who wrote the plurality opinion, and Justice Ginsburg, who joined it, anticipated the issue discussed in text and had the following exchanges with counsel for Alvarez:
JUSTICE KENNEDY: Well, it's a matter— it’s a matter of common sense that it, it seems to me — that it demeans the medal. Let me ask you this: What do you do with the statute that prohibits the wearing of a medal that has not been earned?
MR. LIBBY: Wearing medals is a slightly different category because there you're dealing with conduct rather than content.
JUSTICE KENNEDY: Well, I’m not so sure. You know, the Tinker case with the arm band; it’s purely expressive speech, it seems to me. I think if you prevail here that the wearing prohibition must also be in serious doubt.
MR. LIBBY: It may be or it may be in doubt under certain situations where one is wearing a medal. But certainly Congress has an interest in protecting non-expressive purposes of wearing the medals.
JUSTICE KENNEDY: But I think it is, if the whole purpose of the person who puts the medal on his tuxedo that he didn’t earn is an expressive purpose. That's pure expression.
MR. LIBBY: It may be, Your Honor. But again, we — we view it under a different prism. We—
JUSTICE GINSBURG: Why? I mean, it’s expressive. One is I am speaking through conduct, and the other is I'm speaking through words. You wear the medal and you’re saying I am a Medal of Honor winner.
MR. LIBBY: That's right. And as I said, it may ultimately be the case that the Court finds that, if in fact it’s unconstitutional—
JUSTICE GINSBURG: So, you think that the wearing—
MR. LIBBY: —in this provision, that it could be.
JUSTICE GINSBURG: —that the wearing of a military decoration that you haven’t earned, that that's also of questionable consistency with the First Amendment?
MR. LIBBY: It may be. But, again, it would depend on the circumstances.
JUSTICE GINSBURG: No circumstances. Where you go out in the street with the— with the medal on you for everybody to see.
MR. LIBBY: If — if there’s — if Congress does not have a non-speech purpose for prohibiting the wearing of the medals, then if it’s strictly an expressive purpose, then, yes, there would be a significant First Amendment problem.
JUSTICE KENNEDY: Well, don't you think that’s the case? There’s no non-expressive purpose that I can think of.
*379 MR. LIBBY: Well — and that very well may be. What I can say is in this case what we’re dealing with is strictly a content-based regulation on speech.
Tr. of Oral Arg. 32-34 (Feb. 22, 2012).

. The Ninth Circuit's observation that "most of the activities banned in § 704(a) are not expressive, for example, buying and selling military medals and manufacturing replicas,” 695 F.3d at 872 n. 4, is certainly true but also irrelevant in the circumstances here. As Judge Keenan’s opinion for the panel makes clear, we deal only with the statutory prohibition on "wearing” the uniform and medals. See ante at 371 n. 15. The mere fact that other parts of the statutory scheme might survive under the more lenient O’Brien analysis does not provide a means of escaping the application of the more stringent Johnson analysis to the part of the statute challenged by Hamilton in this case.

. It is trae, of course, that the government’s interests underlying the insignia statutes are not limited to the suppression of free expression. But it seems to me to be quite a leap to interpret the requirement from O’Brien that to be permissible a regulation of expressive conduct should support an interest that is "unrelated to the suppression of free expression” as if it meant that the regulation is impermissible only where the government’s interests are "limited to the suppression of free expression.” In sum, the government will always pursue varied interests statutorily, but it is not clear to me how the government’s interests can be described as "unrelated to the suppression of free expression” where Congress has directed criminal punishment directly at knowingly false, deceitful expressive conduct amounting solely to an individual’s assertions concerning his own past military service.